IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-02922-CNS

C.K.,

    Plaintiff,

v.

COMMISSIONER, Social Security Administration,

    Defendant.

## ORDER

Plaintiff C.K. seeks Supplemental Security Income (SSI) under Title XVI of the Social Security Act based on the following impairments: high functioning autism spectrum disorder, generalized anxiety disorder, and specific learning disorder with impairment in mathematics. Administrative Record (AR) at 20.[1] C.K. filed this lawsuit following the Social Security Administration Commissioner's (the Commissioner) final decision to deny his benefits claim. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court AFFIRMS in part and REVERSES in part the Commissioner's denial of benefits, and REMANDS for further analysis.

### I. BACKGROUND

On September 18, 2020, C.K. filed an application for SSI with an alleged onset date of March 20, 1997. A.R. at 17, 201. C.K. has suffered from high functioning autism spectrum disorder since birth and was provided "therapeutic resources" in school. A.R. at

---

[1] Pursuant to D.C.COLO.L.APR 5.2(b), Plaintiff C.K. is identified by his initials only.

1

49. C.K. received his bachelor's degree in film and television production and maintained part-time work at Talk to the Camera for an unspecified time between September 2020 and May 2023. A.R. at 20. While at Talk to the Camera, C.K. edited short films and taught school-aged children. A.R. at 20. C.K. eventually left Talk to the Camera due to "loosey goosey" work and difficulties "handling [the kids'] energetic behaviors." A.R. at 43–44. Since leaving Talk to the Camera, C.K. has not looked for other employment opportunities due to his high functioning autism spectrum disorder and generalized anxiety about fast-paced, crowded, and loud work environments. A.R. at 44.

The primary reason C.K. has not looked for other employment opportunities is the physical manner in which his anxiety manifests. A.R. at 44. When C.K. experiences an anxiety spike, he may react akin to someone "still in second grade" such as banging his head, walking away, or raising his voice. A.R. at 44. These manifestations have prevented C.K. from finding new employment and are the core of his concerns about maintaining future employment. A.R. at 44.

However, C.K. has learned to manage parts of his high functioning autism disorder and generalized anxiety that allow him to engage in typical daily and leisure activities. In his free time, C.K. reported exercising, drawing, playing video games, and attending church, as well as the independent ability to care for pets, prepare meals, use public transportation, and manage proper hygiene. A.R. at 20–21, 46.

C.K. filed for SSI on September 18, 2020, and was subsequently evaluated by three separate medical professionals. A.R. at 17, 260–27. Dr. David Kalis first evaluated C.K. on June 26, 2019, prior to the relevant period, and re-evaluated C.K. on May 30, 2023. A.R. at 307, 356. Dr. Kalis's 2019 report found that C.K. "had awkward eye contact

2

and difficulty with sustained attention and concentration." A.R. at 308. Dr. Kalis also recounted C.K.'s struggles with his previous employment as a grocery clerk and dishwasher due to pace of work and crowds. A.R. at 308. However, C.K. underwent multiple testing procedures, and Dr. Kalis ultimately concluded that C.K. "can be successful at multiple jobs with more limited social interactions, should receive accommodations in the workplace, and will require some type of job development and coaching." A.R. at 314.

During Dr. Kalis's 2023 re-evaluation, C.K. completed the same testing procedures and saw improvements in his "verbal comprehension, perceptual reasoning, and working memory." A.R. at 364. While C.K. experienced a decline in processing speed, Dr. Kalis attributed the decrease to C.K.'s current stress about his sister's relationship with their parents. A.R. at 364. Due to C.K.'s struggle with processing speed, Dr. Kalis recommended "breaking larger chunks of information into smaller pieces, using checklists for tasks with multiple steps, developing routines, providing additional time to complete tasks, and reducing multitasking." A.R. at 365. Additionally, Dr. Kalis suggested C.K. continue his therapy sessions and find activities that he enjoys to develop new skills. A.R. at 365. Despite C.K.'s "academic and cognitive abilities to be successful at work," Dr. Kalis concluded that C.K.'s "social, emotional, behavior, [and] sensory" limitations would make it difficult to find stable employment. A.R. at 366.

C.K. was also evaluated by Dr. Douglas Hanze in March 2021 and Dr. Dara Goosby in December 2022. A.R. at 57, 68. Both physicians concluded that C.K. was not disabled and was capable of performing work. A.R. at 65–66, 83. While Dr. Hanze determined that C.K. only had mild limitations that did not require any workplace

limitations, Dr. Goosby determined that C.K.'s limitations were more moderate. Despite Dr. Goosby finding that C.K. had moderate limitations in maintaining concentration, persistence, and pace, she concluded that C.K. could still sustain concentration, persistence, and pace for "detailed 3-4 step tasks." A.R. at 66, 80. Dr. Goosby concluded that C.K.'s moderate limitations made him capable of unskilled work. A.R. at 80.

The SSA Regional Commissioner denied C.K.'s initial claim on March 1, 2021, and upon reconsideration, on January 11, 2023. A.R. at 86, 97. C.K. then requested a hearing before an Administrative Law Judge (ALJ). A.R. 104. The ALJ held a hearing on June 13, 2023, after which the ALJ issued a written decision on August 24, 2023. A.R. 14–30, 129. The ALJ determined that C.K. was not disabled within the meaning of the Social Security Act. A.R. at 14. C.K. requested review of the ALJ's decision, which the Social Security Appeals Council denied on September 26, 2023. A.R. 1, 198–99. C.K. timely sought review in this Court.

## II. LEGAL STANDARD AND STANDARD OF REVIEW

An individual is disabled under the Social Security Act if they are unable to do "any substantial gainful activity" due to any medically determinable physical and/or mental impairment that can be expected "to last for a continuous period of not less than 12 months." *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). An individual bears the initial burden of establishing his disability. *See id.* at 1062. To determine whether an individual is disabled, courts use a five-step, sequential analysis that considers whether the individual:

(1) is currently engaged in "substantial gainful activity";

(2) has a "severe" impairment or impairments;

> (3) the impairment or impairments equals one of the impairments listed in the appendix of the relevant disability regulation;
>
> (4) the impairment or impairments prevent the individual from doing their past work; and
>
> (5) has the "residual functional capacity" (RFC) to perform other work in the national economy

*Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)). If there is a determination that an individual is or is not disabled at any point in the analysis, the review stops. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). However, the Tenth Circuit has since clarified that, if the individual is not considered disabled at step three but has satisfied their burden at steps one, two, and four, the burden shifts to the Commissioner to show the individual has the RFC to perform other work in the national economy. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

The Court reviews the Social Security Commissioner's decision to determine whether the factual findings are supported by substantial evidence and the correct legal standards were applied. *See, e.g.*, *Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence" is evidence that is sufficient, based on the entire record, to support the ALJ's factual determinations. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2022). The threshold for this "evidentiary sufficiency is not high," and requires only enough evidence that a reasonable person might accept as adequate to support the ALJ's decision. *Id.* Nonetheless, a decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (quotation

omitted). Under the substantial evidence standard, the Court cannot reweigh evidence or "retry the case." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

### III. ANALYSIS

C.K. seeks reversal or remand of the Commissioner's decision on two grounds, which the Court considers in turn. Having reviewed the administrative record, the parties' briefs, and the relevant legal authority, the Court affirms in part and reverses in part the Commissioner's denial of benefits.

### A. Evaluation of Dr. Kalis's 2019 Opinion

C.K. first contends that the ALJ erred when evaluating the "supportability" and "consistency" factors of Dr. Kalis's 2019 opinion. C.K. argues that the ALJ did not sufficiently explain how the supportability or consistency factors were considered in determining that Dr. Kalis's 2019 opinion was "somewhat but not fully persuasive." A.R. at 27. The Court agrees with C.K.

Under Social Security Regulations, a medical opinion is "a statement from a medical source about what you can still do despite your impairment(s)" 20 C.F.R. § 416.913(a)(2). When evaluating medical opinions, ALJs consider five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as familiarity with the other evidence in the claim. 20 C.F.R. § 416.920c(c).

Supportability and consistency are the most important factors in determining persuasiveness of a medical opinion. 20 C.F.R. § 416.920c(b)(2); *Michael H. v. O'Malley*, No. CV 23-1067-JWL, 2024 WL 125961 (D. Kan. Jan. 11, 2024). The ALJ must articulate how both factors were considered in each medical source's opinion in your decision. *Id.*

6

Supportability is an internal analysis comparing the medical source's own notes or explanations and their opinion. *J.T.L v. Kijakazi*, No. 22-CV-02343-NYW, 2023 WL 5017241 (D. Colo. Aug. 7, 2023); *Crystal R. E. v. Kijakazi*, No. 20-CV-00319-SH, 2022 WL 446023, at *6 (N.D. Okla. Feb. 14, 2022). Meanwhile, consistency compares the "medical source opinion and the evidence from other medical sources and nonmedical sources in the record" *J.T.L.*, No. 22-CV-02343-NYW (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)) (internal citations omitted). If a medical source provides more than one opinion, then the ALJ is permitted to consider all opinions from that medical provider "together in a single analysis" using the factors listed above. 20 C.F.R. § 416.920c(b)(1). The ALJ is not required to evaluate each medical opinion from a single medical source in a separate analysis. *Id.*

Here, the ALJ found Dr. Kalis's 2019 opinion that C.K. would benefit from workplace accommodations and limited social interactions only partially persuasive because "the claimant has exhibited the ability to maintain employment in a social setting for an extended period of time." A.R. at 27. While the presence of the word "supportability" or "consistency" in the ALJ's decision is not a necessity, the ALJ must still provide a sufficient explanation as to how the factor was considered. *See Lindsay M. B. v. O'Malley*, No. 23-CV-00006-SH, 2024 WL 1256287 (N.D. Okla. Mar. 25, 2024); *Harp v. Kijakazi*, No. CV 1:21-0275 KRS, 2022 WL 2341740 (D.N.M. June 29, 2022). A reviewing court must be able to follow the "logical bridge" that the ALJ constructed between the evidence and the ALJ's evaluations of medical opinions. *See K.J.A. v. Krjakazi*, No. 20-1281-SAC, 2021 WL 3674667 (D. Kan. Aug. 19, 2021) (quoting *Blackmon v. Comm'r*, No. 20-1196, 2021 WL 2744656, at *10 (N.D. Ohio Jul. 1, 2021)); *Zambrano v. Kijakazi*, No. CV 1:20-

1356 KRS, 2022 WL 1746765 (D.N.M. May 31, 2022). While both the Court and C.K. presume that the ALJ's statement is referring to C.K.'s employment at Talk to the Camera for three years, mere contextual inferences about the supportability and consistency of a medical opinion are not sufficient. *See Michael H.*, 2024 WL 125961 at 4. Even accepting the contextual inference, the lack of further analysis or explanation render the Court unable to follow the logical bridge that the ALJ constructed. While the Defendant argues that the ALJ conducted a source-level analysis of Dr. Kalis and therefore did not to explicitly state the consistency or supportability of Dr. Kalis's 2019 opinion, the Court disagrees.

Despite the ALJ's ability to evaluate Dr. Kalis's persuasiveness on a source-level analysis, the ALJ chose not to do so. The ALJ evaluated Dr. Kalis's 2019 and 2023 opinions in separate paragraphs, and as such, effectively treated them as separate opinions rather than a single medical source given their differing conclusions. Concerning Dr. Kalis's 2023 opinion, the ALJ determined "that the claimant was unable to work for twelve months is not supported by the evaluation findings, nor is it consistent with the evidence as a whole." A.R. at 27.

Defendant argues that the ALJ's finding should apply to both opinions. D. Br. 9–10. The Court disagrees. The ALJ's statement explicitly refers solely to the conclusion of Dr. Kalis's 2023 opinion, and it makes no attempt to reference or incorporate the 2019 opinion. The ALJ continued to articulate the lack of supportability and inconsistency of Dr. Kalis's *2023* opinion arguing in part that "the claimant was noted to have made improvements in his verbal comprehension, perceptual reasoning, and working memory"

and was able to complete schooling and work part-time. A.R. at 27. As such, the ALJ satisfied her regulatory requirements for Dr. Kalis's 2023 opinion.

The ALJ chose to conduct separate analyses for Dr. Kalis's 2019 and 2023 opinions. But the legal standard for evaluating medical opinions is clear: the ALJ was required to adequately articulate how she considered the supportability and consistency of Dr. Kalis's 2019 opinion, and she did not do so. The ALJ did not err in evaluating the opinions separately but rather in failing to provide an adequate analysis of Dr. Kalis's 2019 opinion. Despite Defendant's contention, the Court cannot justify finding that there was a source-level analysis when the ALJ clearly evaluated each of Dr. Kalis's opinions separately and only satisfied the legal standard with respect to Dr. Kalis's 2023 opinion.

Accordingly, the Court finds that the ALJ did not apply the correct legal standard in assessing Dr. Kalis's 2019 opinion. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (concluding that ALJ's failure to apply proper legal standard is grounds for reversal); *Pisciotta*, 500 F.3d at 1075 (courts review ALJ's findings to ensure correct legal standards were applied). For this reason, remand is appropriate. *See Bryant v. Comm'r, SSA*, 753 F. App'x 637, 643 (10th Cir. 2018) (remanding where ALJ failed to apply the correct legal standard in "evaluating the medical evidence"). On remand, the ALJ must provide a further explanation of the supportability and consistency of Dr. Kalis's 2019 opinion or conduct a proper source-level analysis of Dr. Kalis.

### B. Incorporation of Plaintiff's Moderate Limitations

C.K. argues that the ALJ did not adequately account for Dr. Goosby's finding of C.K.'s moderate limitations in determining C.K.'s RFC and limiting C.K. to unskilled work. The Court disagrees.

An ALJ "can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)). The ALJ is not required to expressly address each moderate limitation in their RFC. *Id.* (citing *Lee v. Colvin*, 631 F. App'x 538, 541–42 (10th Cir. 2015)). However, the connection between limitation and the type of work must be clear otherwise "restricting a claimant to particular work activities does not adequately account for the claimant's mental limitations." *Parker v. Comm'r, SSA*, 772 F. App'x 613, 616 (10th Cir. 2019).

In *Smith*, the doctor determined that the claimant had nine moderate limitations including maintaining concentration, persistence, and pace as well as completing a normal work week without interruption. 821 F.3d at 1268. The Tenth Circuit determined that the ALJ's assessment that the claimant "could (1) not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks" sufficiently incorporated all moderate limitations. *Id.* at 1269.

C.K.'s case closely resembles the facts of *Smith*. Dr. Goosby evaluated C.K.'s sustained concentration and persistence limitations in December 2022. A.R. at 79–80. Dr. Goosby found that C.K. had moderate limitations in (1) the ability to maintain attention and concentration for extended periods and (2) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. A.R. at 80. Dr. Goosby determined that C.K. could maintain concentration, persistence, and pace for "detailed 3-4 step tasks." A.R. at 80. In conjunction with Dr. Goosby's findings about C.K.'s moderate limitations, the ALJ also relied on the testimony of the vocational expert about C.K.'s moderate limitations. C.K. argues that the ALJ impermissibly "cherry picked" from

the testimony of the vocational expert by declining to reference two hypotheticals about constant supervision and walking away from work. Pl. Br. 21–22. The Court disagrees.

When evaluating a vocational expert's testimony, an ALJ is "not required to accept the answer to a hypothetical question that included limitations claimed by the plaintiff but not accepted by the ALJ as supported by the record." *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995). During C.K.'s hearing, the ALJ posed two hypotheticals to the vocational expert about potential employment opportunities for someone who (1) would need constant supervision and/or (2) would need to frequently walk away from the workstation. A.R. at 52. As to the first hypothetical, the vocational expert testified that there would be no jobs, and as to the second, the expert testified that repeated instances of leaving work would likely be cause for termination. A.R. at 52. However, these specific limitations were implicitly claimed by C.K. during his testimony about his anxiety spikes and coping mechanisms. *See* A.R. at 44–45. While Dr. Goosby found C.K. had moderate limitations in the ability to complete work without interruptions, there was no further suggestion that C.K. needed constant supervision to complete tasks or that he would need to frequently walk away from the workstation.

Additionally, the ALJ found that the evidence in the record did not support those particular limitations, specifically stating that

> [C.K.] gets along very well with authority figures; and has no problems following written instructions and can finish what he starts. During the hearing, the claimant testified that he is able to live with his parents; perform his personal care activities; exercise; and draw, play computer games, and record various sound effects. These abilities and activities show that no further limitations than the social, simple work related to math, and persistence and pace limitations as set forth in the above residual functional capacity are warranted.

11

A.R. at 24.

The ALJ continued by stating that "the treatment records, objective evidence, and clinical findings do not support the severity and frequency of symptoms and the degree of functional deficits and limitations alleged." *Id.* The Court rejects C.K.'s argument that the ALJ "cherry picked" evidence from the vocational expert's testimony. The ALJ was under no obligation to rely on statements unsupported by the factual record in front of her. Thus, the ALJ did not err on this matter. *See Smith*, 821 F.3d at 1270; *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990) ("[T]he hypothetical posed to the vocational expert did not set forth only impairments which had been accepted as true by the ALJ. Therefore, his opinion was not binding on the ALJ."); *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) (finding an ALJ was not bound by clearly advantageous hypotheticals that were unestablished and conclusive). *Cf. Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (the ALJ erred in failing to pose *any* hypotheticals to the vocational expert about plaintiff's physical limitations).

In her written decision, the ALJ recognized and agreed with Dr. Goosby's finding of moderate limitation in maintaining concentration and the vocational expert's testimony about available occupations based on that limitation. The ALJ found that "[C.K.] can accept instructions from supervisors; can occasionally interact with coworkers and the general public, but must avoid crowded environments, such as, restaurants, grocery stores, and theaters; must avoid work requiring more than simple mathematic calculations; and must avoid fast paced production quotas." A.R. at 22. The ALJ was explicit in her explanation that "the limitations regarding fast paced production quotas is because of the claimant's difficulty with concentration and processing." A.R. at 28. The

ALJ did not ignore the moderate limitation in working without interruption but rather incorporated it to the extent she saw fit. For example, C.K. testified that one reason his anxiety spikes and causes him to walk away unannounced is based on "how much [he] need[s] to hurry in order to complete assignments." A.R. at 44. Thus, a major disruption to C.K.'s concentration is due to pace of work, and the ALJ directly accounted for that limitation in her RFC.

Based on the RFC and testimony of the vocational expert, the ALJ determined that C.K. was capable of jobs with a level two Specific Vocational Preparation (SVP) rating. A.R. at 29. The Social Security Administration utilizes SVP levels to determine the length of time needed to "achieve average performance in a job." Social Security Administration Program Operations Manual System § DI 25001.001A.77. The amount of time needed for a level two SVP rating is "anything beyond short demonstration up to and including 1 month." *Id; See Vigil*, 805 F.3d at 1204 (equating SVP level one or two with unskilled work).

Accordingly, the Court finds that the ALJ's RFC determination and C.K.'s limitation to unskilled jobs properly accounts for all moderate non-exertional limitations just as in *Smith* and is sufficiently clear as required by *Parker*. *See also Sullivan v. Colvin*, 519 F. App'x 985, 989 (10th Cir. 2013) ("[T]he ALJ's RFC determination that Ms. Sullivan was limited to unskilled, supervised work with no regular public contact adequately addressed Dr. Hansen's medical opinion that Ms. Sullivan's gross mental status is within normal limits but that she is unable to tolerate stress."). On this issue, the Court affirms the ALJ's finding.

## IV. CONCLUSION

For the reasons set forth above, the Court AFFIRMS in part and REVERSES in part the Commissioner's decision denying C.K. supplemental security income, and REMANDS for further proceedings consistent with this order.[2]

DATED this 13th day of March 2025.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge

---

[2] The Court does not address C.K.'s request for immediate award of benefits due to the Court's limited remand concerning Dr. Kalis's medical opinions.